UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LORI ANN DAVIDSON, STEVEN
LEE DAVIDSON, and WENDY
ANNE BRUESSOW,

              Plaintiffs,

                          Case No.: 8:09-cv-727-T-33MAP

v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

              Defendant.

_____/

## ORDER

This matter comes before the Court pursuant to GEICO's objection to the Magistrate Judge's Order of March 19, 2010 (Doc. # 38) and non-party Dale M. Swope's response in opposition (Doc. # 46). Also pending are Plaintiffs Lori Ann Davidson and Steven Lee Davidson's motion for reconsideration (Doc. # 40, 45) and GEICO's response in opposition (Doc. # 47). Also before the Court are GEICO's motion for summary judgment (Doc. # 55), the Davidsons' response in opposition (Doc. # 60), as well as the Davidsons' motion for partial summary judgment (Doc. # 56), and GEICO's response in opposition (Doc. # 57).

For the reasons that follow, the Court overrules GEICO's objection to the Magistrate Judge's discovery order, denies the Davidsons' motion for reconsideration, denies the Davidsons' motion for partial summary judgment, and grants GEICO's motion for summary judgment.

I.   **Factual Background**

This is an action brought by the Davidsons, as the insureds, against GEICO, their insurer, in which the Davidsons allege that GEICO acted in bad faith in its handling of a claim brought against them by the family of Brittany Forbes, and that GEICO's bad faith led to the entry of a judgment against the Davidsons in excess of their policy limits.

Specifically, GEICO issued a Florida automobile insurance policy to the Davidsons (policy number 1C488690), effective from July 22, 2002, through January 22, 2003. (Doc. # 55-1).  The policy provided bodily injury liability coverage in the amount of $10,000 per person and $20,000 per occurrence.  (<u>Id.</u>)

On December 8, 2002, at 12:14 a.m., a single vehicle accident occurred in Bradenton, Florida, involving a 1998 Mazda owned by the Davidsons and insured pursuant to the

GEICO policy. Fifteen-year-old Thomas Bruessow, an unlicenced driver, was behind the wheel of the Mazda, and was a permissive driver. (Doc. # 55-2). Brittany Forbes, also a minor, was his passenger. (Id.) Traveling at a high rate of speed, Thomas Bruessow lost control of the vehicle and the vehicle struck the curb. (Id.) Thereafter, the vehicle "traveled west off the roadway and flipped end over end three times before it came to final rest in a retention pond." (Id. at 3-4). Brittany Forbes was critically injured during the accident. (Doc. # 55-5).

GEICO determined that Thomas Bruessow, as a permissive operator of the Mazda, was covered under the GEICO insurance policy issued to the Davidsons. In addition, Wendy Bruessow, Thomas Bruessow's mother, informed GEICO on December 10, 2002, that the Bruessows were insured by Hanover Insurance Company. (Doc. # 55-3 at 73). GEICO contacted Hanover, and Hanover confirmed that it issued an insurance policy to the Bruessow family with policy limits of $25,000 per person and $50,000 per occurrence, but that Hanover was investigating coverage because Thomas Bruessow was not listed as a driver under the policy and was not a licenced driver. (Doc. # 55-3 at 71).

The record contains notations made by Hanover on
December 12, 2002, indicating: (1) that GEICO informed
Hanover that a vehicle driven by a Hanover insured had an
"at fault" accident; (2) that "we are responsible" for the
bodily injury of the passenger; and (3) that the passenger
was thrown from the vehicle into the water and "is still in
a coma from the acc[ident]." (Doc. # 55-5 at 1-2).

A.   **GEICO's Initial Settlement Attempts**

On December 19, 2002, GEICO received verbal notice that
the Forbes family was being represented by attorney Ken
Ward.   On December 23, 2002, GEICO received the accident
report from the Florida Highway Patrol, which verified the
circumstances of the accident.   On December 26, 2002, GEICO
tendered the full $10,000 policy limits to the Forbes
family, through Ward.

On January 3, 2003, Daniel Perez, an attorney from
Ward's office, sent GEICO a letter rejecting GEICO's
settlement check, explaining: "Mr. and Mrs. Forbes are
spending much of their time at the hospital and Mr. Ward has
not yet had a chance to explain to them the full
implications and logic behind settling for your insured's
policy limits.   There are issues of potential liens against

the settlement and also at least $200,000 of available underinsured motorist coverage . . ." (Doc. # 55-7). The January 3, 2003 letter further noted, "I have also received a fax of your disclosures, but would appreciate it if you could provide an original set of documents that comply with 627.4137 (attached), including a *certified* copy of the actual insurance policies." (Id.) (Emphasis in original). The letter also requested an opportunity to inspect the Mazda. (Id.)

On January 22, 2003, GEICO responded to the January 3, 2003, letter reiterating GEICO's willingness to settle for the full policy limits, advising that Hanover may provide additional coverage, indicating that the vehicle was signed over to the tow yard for towing and storage fees, and enclosing an affidavit of insurance coverage. (Doc. # 55-8).[1]

On February 3, 2003, Perez sent a letter to GEICO advising that GEICO's January 22, 2003 letter "was the first I have heard that Hanover Insurance is involved in this matter." (Doc. # 55-9). The letter further indicated,

---

[1] Therein, GEICO also noted that it had ordered a certified copy of the insurance policy, but "it takes time to prepare the same." (Doc. # 55-8).

"Please provide me with all the information you have concerning coverage afforded by Hanover, including whether it includes bodily injury coverage. If settlement is going to include a release of the driver, I will have to have full statutory disclosures for this policy, including a certified copy of this policy. If you have a contact person and a claim number for the Hanover policy, I would sure like to have that information as well." (<u>Id.</u>)

On January 30, 2003, Julie Swain, a Hanover claims adjuster, advised Perez about the Hanover policy. (Swain Aff. Doc. # 55-10 at 1, ¶ 3). On January 31, 2003, Chanda Bates, another Hanover claims adjuster, communicated information about the Hanover policy to Ward's firm. (Bates Aff. Doc. # 55-10 at 3, ¶ 3).

Thereafter, on February 7, 2003, GEICO sent Perez a letter providing him with pertinent information about the Hanover policy, including but not limited to Hanover's address, claim number, policy limits, and contact person. (Doc. # 55-11). On March 11, 2003, GEICO sent a letter to Ward as follows:

> I am writing this letter on behalf of our insured Lori Davidson. Ms. Davidson has no collision coverage on her policy. The driver of her

-6-

vehicle, Thomas Bruessow, does.  Mr. Bruessow is
insured with Hanover Insurance and his collision
coverage will extend to Ms. Davidson.  Before
processing that claim, Hanover is insisting on
inspecting the 1998 Mazda.  We understand your
firm has purchased the salvage.

Ms. Bates, of Hanover, will not contact your
office because Hanover has no confirmation from
your office that you are representing Ms. Forbes.

Please have someone from your office contact Ms.
Bates . . . .

(Doc. # 55-12).

## B.   Perez's Conditional Settlement Offer

On March 14, 2003, Perez sent GEICO a letter containing
a conditional settlement offer.  The letter advised GEICO
that the Forbes family was entitled to receive $100,000
under their own insurance policy through Allstate,  and that
"I think we are ready to settle with your insureds now for
the available coverage." (Doc. # 55-14 at 1).  Perez further
noted that Brittany Forbes is a minor, so her settlement
will require court approval. (Id.)  In addition, Perez
pointed out "I have never received compliance with Florida
Statute 627.4137.  I note that last month you had ordered
the certified copy of GEICO's policy, but it still has not
come through, so a follow-up will probably be required."
(Id.)

-7-

The conditional settlement offer indicated that such offer "may only be accepted by performance, not by a promise, and its terms are for the settlement funds to be delivered to my office . . . accompanied by any release documents you will require signed releasing only GEICO, its insured, and their carriers, within 20 days from the date of this letter.   Within that time, I must also receive the documents and information described in 627.4137, Florida Statutes, *including* a certified copy of GEICO's policy." (Doc. # 55-14 at 2)(emphasis in original).

Perez's letter further stated, "My understanding of what we are entitled to as a certified insurance policy is a dec sheet describing the coverage limits and listing the applicable policy forms and endorsements, plus a copy of those forms and endorsements, with a notarized signature of a competent person affirming that they are accurate, according to GEICO's records." (<u>Id.</u>)   The letter also requested that GEICO reimburse Brittany Forbes for her clothing, shoes, and purse that were destroyed in the accident (estimating an amount of $200 to $300). (<u>Id.</u>)

GEICO advised the Davidsons of the settlement offer on April 1, 2003, and on April 3, 2003, GEICO had delivered a

-8-

check in the amount of $10,200 (representing the policy
limits plus $200 for Brittany Forbes' personal items), an
affidavit of coverage, and a certified copy of the GEICO
policy. (Doc. # 55-16).  Denise Johnson from Ward's law firm
signed for the documents.  (Id.)

   **C.   Perez Withdraws the Conditional Settlement Offer**

   On April 10, 2003, Perez sent GEICO a letter
withdrawing the conditional settlement offer and returning
the $10,200 check.  The letter explained: "I cannot settle
this case without full compliance with the disclosure
requirements of Florida Statute 627.4137, from your insureds
and all of their insurance companies.  All you have given me
is the GEICO policy and the GEICO policy limits.  I have
gotten nothing from the excess insurer [Hanover] or from
your insureds." (Doc. # 55-18).   The letter stated that
Ward and the Forbes  family "believe your insureds might be
trying to hide something." (Id.)  The letter also accused
Hanover of acting in bad faith, but expressed continued
willingness to settle with GEICO after investigation of
Hanover's "failure to make its payment and disclosures."
(Id.)  Perez filed suit against the Davidsons on behalf of
the Forbes family and enclosed a copy of the complaint with

the April 10, 2003 letter. (<u>Id.</u>)

       D.   **GEICO Warns the Davidsons about the Suit**

On April 16, 2003, GEICO sent a letter to the Davidsons explaining that its settlement attempts had been unsuccessful, and warning the Davidsons of the lawsuit filed against them by the Forbes family. (Doc. # 55-19).  Among other things, the detailed letter advised the Davidsons that the claim could exceed their coverage and result in an excess judgment.  The letter also enclosed affidavits for the Davidsons to complete, noting that Perez had not specifically requested such affidavits until after rejecting GEICO's latest tender of its policy limits, but that completion of the same could facilitate settlement. (<u>Id.</u>)

The Davidsons completed the affidavits, and GEICO forwarded the affidavits to the Davidsons' defense counsel, attorney Haas. (Doc. # 55-20).  In addition, on April 16, 2003, GEICO wrote Perez in an attempt to revive the settlement offer.  GEICO stated that it thought that it fully complied with Florida Statute Section 627.4137, and noted that the settlement offer from Perez did not request any disclosures from the Davidsons. (Doc. # 55-21).  Nevertheless, GEICO explained that it obtained affidavits

from the Davidsons and would send them to Ward's office. The letter also stated that if Ward needed information not included in the affidavits, GEICO would provide the information. Further, as to Hanover, GEICO stated that it furnished to Ward all of the information that GEICO had and, because it was not certain about Hanover, it could not provide information about the Hanover policy to Ward under oath. (<u>Id.</u>)

On April 23, 2003, GEICO sent another letter to the Davidsons, again warning them of the Forbes family's suit, and the possibility of an excess judgment as well as providing them information about attorney Haas, the defense attorney selected by GEICO to represent the Davidsons. (Doc. # 55-22).

On May 7, 2003, Ward sent a letter to GEICO indicating that no settlement had been be reached, essentially because GEICO did not tender Hanover's policy limits and because GEICO did not provide "statutory disclosure statements" from its insureds. (Doc. # 55-23).[2]   GEICO responded on May 19,

---

[2] Among other things, the detailed letter stated, "I note that way back on February 3rd of this year, Mr. Perez requested for you to provide us 'full statutory disclosures', for the Hanover excess policy, including a certified copy of the policy, before we could settle with your insured, Thomas

-11-

2003, explaining that "we have had some difficulty in securing the actual coverage information from Hanover Insurance.  In response to Mr. Perez's letter of 2/3/03, we have provided all information in our possession regarding Hanover's policy." (Doc. # 55-24).

With no settlement reached, the suit styled <u>Douglas Staley et al. v. Lori Ann Davidson, Steven Lee Davidson, Wendy Bruessow and Thomas Robert Bruessow</u>, Case no. 2003-CA-1946, proceeded to trial in the Circuit Court of the Twelfth Judicial Circuit in and for Manatee County, Florida and resulted in the entry, on April 30, 2007, of an excess judgment of $330,132.26 being entered against the Davidsons and Thomas and Wendy Bruessow. (Doc. # 1 at 9-10).[3]

## II.  **Procedural History**

### A.  **The Complaint and Answer**

On April 14, 2009, the Davidsons and Wendy Bruessow filed the present suit against GEICO alleging bad faith claims handling.  (Doc. # 1).  GEICO filed its answer and affirmative defenses on May 12, 2009, and stated as

_____

Bruessow.  You have never complied with this request." (Doc. # 55-23 at 2).

    [3] The Ward firm and the firm of Swope, Rodante, P.A. represented the Forbes family during the state court trial.

affirmative defenses that the Forbes family "unreasonably refused to accept GEICO's tender of the policy limits," that "GEICO did not have a realistic opportunity to settle the subject claim within the applicable policy limits," and that the Forbes family was "unwilling to settle their claims against the Plaintiffs within the applicable policy limits." (Doc. # 3 at 5).

B.  **GEICO's Discovery Order Objection**

To support its above-noted affirmative defense, GEICO sent a subpoena duces tecum to both the Ward firm and the Swope firm requesting each law firm's complete file on Brittany Forbes, and both firms filed motions to quash. (Doc. ## 12, 19).  On March 19, 2010, Magistrate Judge Pizzo issued an order granting the motions to quash. (Doc. # 36). Among other things, Judge Pizzo noted:

> With its blanket request for the entire claim files, including documents which do not even relate to claims brought by or brought against any member of the Forbes family, [GEICO] failed to take *any* steps to avoid imposing an undue burden on either Swope or Ward.  Furthermore, [GEICO] seeks the entire claim files, including electronic information, for litigation which lasted more than five years. . . . Requiring non-parties to sift through this voluminous amount of documents and information, especially given [GEICO's] failure to demonstrate what relevant information or documents Swope and Ward's claim files contain which it either has not already obtained or cannot obtain

-13-

> through other means, creates an undue burden on
> both Swope and Ward.

(Doc. # 36 at 4-5).

GEICO objected to Judge Pizzo's order (Doc. # 38) and Swope responded to GEICO's objection (Doc. # 46). This Court must now address GEICO's objection. A district court shall consider objections to a magistrate judge's order on nondispositive matters and modify or set aside any portion of the order if it is found to be "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). A finding of fact is clearly erroneous only if the reviewing court is left with a definite and firm conviction that a mistake has been made. See Ford v. Haley, 195 F.3d 603, 617 (11th Cir. 1999).

Upon due consideration, the Court affirms Judge Pizzo's discovery order. The order is neither clearly erroneous nor is it contrary to law. His order correctly applies the governing rules of Civil Procedure, specifically Rules 26 and 45. In quashing the discovery requests at issue, Judge Pizzo appropriately took into consideration the tremendous burden such requests placed on non-parties and also considered GEICO's failure to limit its requests in an appropriate manner. Rule 45(c)(1) of the Federal Rules of Civil Procedure requires the issuing party, here GEICO, "to

-14-

take reasonable steps to avoid imposing undue burden or expense on a person subject to the subopoena." Judge Pizzo determined that GEICO failed to do so, and this Court affirms Judge Pizzo's reasoning.

C.   **Withdrawal of Wendy Bruessow from Suit**

On February 2, 2010, Wendy Bruessow filed a motion seeking to be dismissed from this action without prejudice. (Doc. # 30). GEICO responded that dismissal of Wendy Bruessow should be with prejudice, rather than without prejudice. In addition, GEICO requested an order barring the remaining plaintiffs, the Davidsons, from presenting argument concerning GEICO's duties to Wendy Bruessow. (Doc. # 35).

On March 30, 2010, the Court entered an order dismissing Wendy Bruessow with prejudice pursuant to Rule 41(a)(2), Fed.R.Civ.P., and barring the Davidsons from arguing that GEICO owed duties to Wendy Bruessow or that GEICO breached any such alleged duties. (Doc. # 37). The Court explained, "the Court determines that the conditions suggested by GEICO are reasonable and will promote the interests of finality and conservation of scarce judicial resources." (Doc. # 37 at 4).

-15-

Thereafter, the Davidsons sought reconsideration of the Court's order, arguing that dismissal should have been issued without prejudice and objecting to the conditions set out by the Court barring the Davidsons from arguing about GEICO's duties to Wendy Bruessow. (Doc. # 40). Thereafter, Wendy Bruessow stated during her deposition that she no longer desires to sue GEICO and agrees to be dismissed with prejudice. (Doc. # 47-1 at 9). Accordingly, the Davidsons amended their motion for reconsideration by dropping the contention that dismissal of Wendy Bruessow should have been without prejudice. The Davidsons, however, maintained their objection to the Court's bar on their presentation of argument concerning GEICO's duties to Wendy Bruessow and breach of such duties: "It is inherently unfair to restrict the remaining Plaintiffs in any way insofar as the facts or the law they can allege in support of their own claims, since the remaining Plaintiffs did not file the Motion to Dismiss and were not movants in any way related to the relief sought in that motion." (Doc. # 45 at 3). However, the Davidsons do not provide any supporting case law to substantiate this proposition.

GEICO responded to each of the Davidsons' contentions,

-16-

emphasizing that dismissal without prejudice is not a matter of right, and that the Court is free to impose appropriate conditions upon dismissal of a party. (Doc. # 47).

**D.   Legal Standard for Reconsideration**

As stated in <u>Fla. College of Osteopathic Medicine, Inc. v. Dean Witter Reynolds, Inc.</u>, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998), "A motion for reconsideration must demonstrate why the court should reconsider its past decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Further, "in the interests of finality and conservation of scarce judicial resources, reconsideration is an extraordinary remedy to be employed sparingly." <u>Lamar Adver. of Mobile, Inc. v. City of Lakeland</u>, 189 F.R.D. 480, 489 (M.D. Fla. 1999).

This Court recognizes three grounds to justify reconsideration of a prior order: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." <u>Fla. College of Osteopathic Med., Inc.</u>, 12 F. Supp. 2d at 1308.

-17-

Upon due consideration, the Court denies the reconsideration motion. The Davidsons have not argued that there has been a change in controlling law, nor do they argue that new evidence exists. They assert that reconsideration is needed to prevent manifest injustice, but fail to support this argument. The Davidsons indicate their dissatisfaction with the Court's limitation of their arguments concerning Wendy Bruessow, a party dismissed with prejudice; however, they have not identified a single argument concerning Wendy Breussow that they seek to make in order to advance their case against GEICO. The sole issue to be resolved in this case is whether GEICO breached its duties to the Davidsons. Therefore, the Court's order narrowing the case by dismissing Wendy Bruessow with prejudice (upon her request) and barring evidence concerning her relationship with GEICO was reasonable.

The Court enjoys broad discretion concerning the manner in which it manages the cases before it. See Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002). In this case, the Court exercised its discretion by narrowing the focus of the case to the claims of the existing parties. No appropriate grounds for reconsideration exist. Thus, the

-18-

Court denies the reconsideration motion.

### III. **Summary Judgment Analysis**

Now that the Court has addressed the pretrial objections posed by the parties, the Court will consider the Davidsons' motion for partial summary judgment, as well as GEICO's motion for summary judgment.

### A. **Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is

-19-

material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a

genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

B. **Bad Faith Claims Handling**

In this diversity case, the Court applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. Tech. Coating Apps., Inc. v. United States Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). Furthermore, this Court must apply Florida law in the same manner that the Florida Supreme Court would apply it. Brown v. Nichols, 8 F.3d 770, 773 (11th Cir. 1993).

In Berges v. Infinity Ins. Co., the Florida Supreme Court explained the purpose of bad faith insurance law:

> Bad faith law was designed to protect insureds who
> have paid their premiums and who have fulfilled
> their contractual obligations by cooperating fully
> with the insurer in the resolution of claims. The

> insurance contract requires that the insured
> surrender to the insurance company control over
> whether the claim is settled.   In exchange for
> this relinquishment of control over settlement and
> the conduct of the litigation, the insurer
> obligates itself to act in good faith in the
> investigation, handling, and settling of claims
> brought against the insured.  Indeed, this is what
> the insured expects when paying premiums.   Bad
> faith jurisprudence merely holds insurers
> accountable for failing to fulfill their
> obligations . . . .

896 So.2d 665, 682-83 (Fla. 2005).

Twenty-five years earlier, the Florida Supreme Court

set forth the standard to be applied in bad faith

litigation:

> An insurer, in handling the defense of claims
> against its insured, has a duty to use the same
> degree of care and diligence as a person of
> ordinary care and prudence should exercise in the
> management of his own business.  For when the
> insured has surrendered to the insurer all control
> over the handling of the claim, including all
> decisions with regard to litigation and
> settlement, then the insurer must assume a duty to
> exercise such control and make such decisions in
> good faith and with due regard for the interests
> of the insured.  This good faith duty obligates
> the insurer to advise the insured of settlement
> opportunities, to advise as to the probable
> outcome of the litigation, to warn of the
> possibility of an excess judgment, and to advise
> the insured of any steps he might take to avoid
> same.  The insurer must investigate the facts,
> give fair consideration to a settlement offer that
> is not unreasonable under the facts, and settle,
> if possible, where a reasonably prudent person,
> faced with the prospect of paying the total
> recovery, would do so.

<u>Boston Old Colony Ins. Co. v. Gutierrez</u>, 386 So.2d 783, 785 (Fla. 1980)(internal citations omitted). Furthermore, "[a]n insurer cannot escape liability for breach of the duty of good faith by acting upon what it considers to be its interest alone." <u>Id.</u> at 786.

In determining whether an insurer has acted in bad faith in handling a claim, courts apply the totality of the circumstances standard, considering several factors:

> The lack of a formal offer to settle does not preclude a finding of bad faith. Although an offer of settlement was once considered a necessary element of a duty to settle, . . . an offer to settle is not a prerequisite to the imposition of liability for an insurer's bad faith refusal to settle, but is merely one factor to be considered.
> . . . .
> Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause. Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations.
>
> Any question about the possible outcome of a settlement effort should be resolved in favor of the insured; the insurer has the burden to show not only that there was no realistic possibility of settlement within policy limits, but also that the insured was without the ability to contribute to whatever settlement figure that the parties could have reached.
> . . . .
> An insurer has a duty to advise the insured of settlement opportunities and the probable outcome

of a lawsuit and to warn him of the consequences of an excess judgment so that he might take whatever steps are available for his own protection.  Where the insured reasonably relies on the insurer to conduct settlement negotiations, and the insurer fails to disclose settlement overtures to the insured, the jury may find bad faith

Finally, the ultimate tender of the policy limits does not automatically insulate an insurer from liability for bad faith.

Powell v. Prudential Property & Cas. Ins. Co., 584 So.2d 12, 14-15 (Fla. 3d DCA 1991)(internal citations omitted); see also Berges, 896 So.2d at 680.

While the issue of whether an insurer acted in bad faith is ordinarily a question for the jury, many courts have concluded as a matter of law that the insurance company did not act in bad faith. See, e.g., Maldonado v. First Liberty Ins. Co., 342 F. App'x 485, 488 (11th Cir. 2009)(affirming grant of summary judgment in favor of the insurer in bad faith claims handling case after finding that insurer twice offered to settle within the policy limits before the estate withdrew the offer to settle); Shin Crest PTE, LTD v. AIU Ins. Co., 368 F. App'x 14, 16 (11th Cir. 2010)(affirming grant of summary judgment in favor of insurer in a bad faith claims handling case); RLI Ins. Co. v. Scottsdale Ins. Co., 691 So.2d 1095, 1096 (Fla. 4th DCA

1997)(affirming grant of summary judgment in favor of primary insurance company when the record "show[ed] beyond any doubt that the primary insurer at no time missed an opportunity to settle which would have put it in a bad faith posture.").

**C.   The Davidsons' Motion for Partial Summary Judgment**

In their three-page motion for partial summary judgment, the Davidsons request an order finding that GEICO owed them the following duties: (1) to advise them of all settlement opportunities; (2) to advise them of the probable outcome of the litigation if the claims were not settled; (3) to warn them of the possibility of an excess judgment; and (4) to warn them of the steps they might take to avoid an excess judgment. (Doc. # 56 at 3).

Although the Court generally agrees with the Davidsons regarding the duties that GEICO owed them as their insurer, the Court denies the motion because it does not resolve any aspect of this dispute.   Both sides appear to agree that GEICO generally owed the Davidsons the duties enumerated above.[4]   The issue in this case is whether GEICO satisfied

---

[4]Specifically, GEICO represents in its motion for summary judgment that "GEICO's duty of good faith to the Plaintiffs obligated it to advise the Plaintiffs of settlement

these duties in good faith, or rather, if GEICO acted in bad faith.

Federal Rule of Civil Procedure 56 states that a party may move for "summary judgment on all or part of the claim." The Davidsons' motion does not request judgment on the Davidsons' claim against GEICO and does not attempt to dispose of any disputed issue of fact or law. Thus, the relief requested in the Davidsons' motion is not the proper subject of a summary judgment motion. As stated by GEICO, the relief requested by the Davidsons "would not avoid litigation or promote judicial efficiency." (Doc. # 57 at 2). Thus, the Court denies the Davidsons' motion for partial summary judgment.

---

opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the Plaintiffs of any steps they might take to avoid same, as well as to investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." (Doc. # 55 at 13)(internal citations omitted). However, GEICO also correctly maintains that these duties "are not separate duties but are merely factors which are to be considered in determining whether an insurer breached its duty of good faith." (Doc. # 57 at 4). Good faith is judged under the totality of the circumstances, and "a breach of any one factor does not, in itself, establish a breach of the duty of good faith. Berges, 896 So.2d at 680.

**D.**   **GEICO's Motion for Summary Judgment**

GEICO seeks an order of summary judgment arguing that, under the totality of the circumstances, it did not breach its duty of good faith to the Davidsons.  After considering the entire record, the Court rules in favor of GEICO and finds, as a matter of law that GEICO did not act in bad faith.

This finding is supported by the undisputed fact that GEICO offered to tender, and did tender, the policy limits to the Forbes family on multiple occasions.  GEICO first tendered the full $10,000 policy limits to the Forbes family (through their counsel) on December 26, 2002.  That first tender was rejected by the Forbes family through their counsel, who essentially stated that it was too early to settle the case.

Next, on January 22, 2003, GEICO sent a letter to the Forbes family's counsel reiterating GEICO's willingness to settle for the full policy limits.  In addition, on April 3, 2003, GEICO hand-delivered a check to the Forbes family's counsel in the amount of $10,200 (representing the policy limits plus an additional $200 for Brittany Forbes' personal items).

-27-

It is undisputed that the Forbes family rejected GEICO attempts to settle.[5]  An insured cannot force an injured claimant to settle a claim, and in this case, the record shows that the Forbes family was not willing to settle with GEICO for the policy limits.

The Davidsons argue that GEICO breached its duty to "settle, if possible." <u>Gutierrez</u>, 386 So.2d at 785. Specifically, the Davidsons assert that GEICO failed to comply with the terms of the Forbes family's March 14, 2003 offer to settle.  The Davidsons contend that GEICO's failure to comply with the settlement offer was due to GEICO's failure to follow Florida Statute Section 627.4137.  Among other things, the Davidsons contend that such statute required GEICO to tender to the Forbes family a certified copy of the Hanover policy, as well as Hanover's policy limits.

---

[5] The Court acknowledges that, in assessing a bad faith claims handling case, it is required to scrutinize the insurer's conduct, rather than the conduct of the claimant or the insured. <u>See</u> <u>Maldonado</u>, 342 F. App'x at 488.  The Court has described the conduct of the Forbes family as well as the Davidsons so as to provide a proper context for its discussion of GEICO's actions.

The Court rejects the Davidsons' argument that GEICO acted in bad faith because it failed to comply with Florida Statute Section 627.4137.  That statute states:

(1)   Each insurer which does or may provide liability insurance coverage to pay all or a portion of any claim which might be made shall provide, within thirty days of the written request of the claimant, a statement, under oath, of a corporate officer or the insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance:

(a)   The name of the insurer.
(b)   The name of each insured.
(c)   The limits of the liability coverage.
(d)   A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement.
(e)   A copy of the policy.

In addition, the insured, or her or his insurance agent, upon written request of the claimant or the claimant's attorney, shall disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this subsection to all affected insurers.  The insurer shall then supply the information required in this subsection to the claimant within 30 days of receipt of such request.

(2) The statement required by subsection (1) shall be amended immediately upon discovery of facts calling for an amendment to such statement.

Florida Statute Section 627.4137.

-29-

The Court determines that GEICO complied with the statute.   The record shows that in response to the March 14, 2003 offer to settle, GEICO tendered its policy limits (plus an additional $200 for Brittany Forbes' personal items), delivered a certified copy of its policy to Ward, and provided an affidavit of coverage that discussed all coverage actually known to GEICO.   Although GEICO had heard that Hanover may provide some coverage to the Bruessow family, GEICO had been informed that Hanover was investigating the claim because the driver of the Mazda was only fifteen and unlicenced.   Further, Hanover represented that it needed to inspect the Mazda that was involved in the accident.

It appears that the Forbes family rejected GEICO's tender of the $10,200 check because GEICO failed to include therewith "a sworn statement of coverage, or certified copy of insurance from Hanover," as well as the policy limits of the Hanover policy.

However, the Court finds that Florida Statute Section 627.4137 did not require GEICO to provide a sworn statement of coverage from another insurance company, namely Hanover, especially when GEICO did not know whether the Hanover

-30-

policy would provide coverage under the circumstances of the accident.    The Court finds that GEICO was only responsible for providing information about and providing tender of its own policy.    GEICO was not responsible for the Hanover policy, had no control over Hanover, and it did not breach its duty of good faith to the Davidsons when it failed to provide the Hanover policy to the Forbes family.

Further, it should be noted that the March 14, 2003 settlement offer from the Forbes family did not even mention Hanover.    GEICO's interpretation that the Forbes family sought only GEICO's policy limits was objectively reasonable.    Further, to the extent that there is ambiguity in the terms of a settlement offer or demand letter, it will be construed against the draftsman.   City of Homestead v. Johnson, 760 So.2d 80, 84 (Fla. 2000).

The record shows that counsel for the Forbes family knew of the Hanover policy due to GEICO's January 22, 2002, February 7, 2003, and March 11, 2003 letters.    The record also contains affidavits from Hanover claims adjusters who aver that they were in contact with counsel for the Forbes family.    Hanover had an independent obligation to investigate the accident and may have had an obligation to

engage in settlement discussions with the Forbes family. Powell, 584 So.2d at 14. It was not indicia of bad faith for GEICO to assume that the Forbes family would deal directly with Hanover.[6] Further, as argued by GEICO, "GEICO had no ability to control Hanover's tender of its policy limits." (Doc. # 55 at 18).

If the Forbes family's offer to settle was conditioned upon Hanover's tender of the policy limits, then GEICO had no opportunity to settle its claim as tender of Hanover's policy was out of its realm of control. See Maldonado, 342 F. App'x at 488 (affirming determination that insurer did not act in bad faith as a matter of law when the insurer "twice offered to settle within the policy limits . . . [and] tendered a check for the $25,000 policy limit . . . before the Estate withdrew its offer to settle").

The duty of good faith required GEICO to settle if possible, but the absence of a settlement in this case does not mean that GEICO acted in bad faith. GEICO's continuous attempts to settle by tender of the full policy limits

---

[6] Even if GEICO was mistaken about the Forbes family's access to information about Hanover, this would not rise to the level of bad faith. Indeed, bad faith is more than mere negligence. Gutierrez, 386 So.2d at 785.

-32-

demonstrate that GEICO acted in good faith.  Further, the
record shows that GEICO advised the Davidsons of all
settlement opportunities, advised them as to the probable
outcome of the litigation, warned them of the possibility of
an excess judgment, and advised them of the steps they might
take to avoid same.  GEICO also investigated the facts, gave
fair consideration to the Forbes family's settlement offer,
and tried to settle with the Forbes family.  The Forbes
family rejected GEICO's settlement attempts.

GEICO was required to "settle if possible, where a
reasonably prudent person, faced with the prospect of paying
the total recovery, would do so."  In this case, GEICO
indeed tried, but was unsuccessful.  In Clauss v. Fortune
Ins. Co., 523 So.2d 1177 (Fla. 5th DCA 1988), the insurer
tendered its policy limits to the insured claimant after the
expiration of the claimant's settlement offer.  Id. at 1178.
Ultimately, the claimant sued the insured, and an excess
judgment was entered against the insured.  Id.  The insured
sued its insurer for bad faith claims handling.  Id. The
court determined that a judgment in favor of the insurer was
appropriate because the insurer acted reasonably in its
attempts to settle with the claimant on behalf of the

-33-

insured, especially because the insured "tendered its full policy limits within 60 days of the date of the accident," even if such tender was after the expiration of the offer to settle. Id.

In the present case, GEICO repeatedly tendered the policy limits (before and after the expiration of the Forbes family's settlement offer) and even after multiple rejections of the policy limits, GEICO continued in its attempts to facilitate a settlement between the Davidsons and the Forbes family.

Florida common law places upon GEICO the "duty to [its] insureds to refrain from acting solely on the basis of [its] own interests in settlement." State Farm Mut. Auto. Ins. Co. v. LaForet, 658 So.2d 55, 58 (Fla. 1995).  In this case, the Court determines that summary judgment in GEICO's favor is warranted because there is a complete absence of evidence that GEICO acted solely on the basis of its own interests. The Court acknowledges that the issue of whether an insurer acted in bad faith is often one best decided by a jury.[7]

---

[7] In Johnson v. GEICO, 318 F. App'x 847 (11th Cir. 2009), the court explained, "Whether an insurer acted in bad faith generally raises an issue of fact for determination by a jury. But, Florida appellate courts have affirmed summary judgment where the undisputed facts would allow no reasonable jury to

However, in cases like the present one, where no reasonable jury could possibly find that GEICO acted in bad faith, the Court is obligated to grant summary judgment and save the parties the time and expense of submitting the case to a jury.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   GEICO's objection to the Magistrate's Order of March 19, 2010 (Doc. # 38) is **OVERRULED**.

(2)   The Davidsons' motions for reconsideration (Doc. # 40, 45) are **DENIED**.

(3)   GEICO's motion for summary judgment (Doc. # 55) is **GRANTED**.

(4)   The Davidsons' motion for partial summary judgment (Doc. # 56) is **DENIED**.

---

conclude the defendant acted in bad faith." Id. at 849-50 (internal citation omitted).  There, the court concluded that "insufficient evidence of bad faith was proffered to take this case to a jury. . . . GEICO offered the policy limits within . . . 33 days of the accident date.  In light of the information known to GEICO and the totality of the circumstances, no reasonable jury could find that GEICO breached its duty of good faith." Id. at 851.

-35-

(5) The Clerk is directed to enter Judgment in favor of GEICO, terminate all remaining pending motions and deadlines, and, thereafter, to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 26th day of October 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record